### JOSEPH ADAMS vs. THOMAS MILLS.

An affidavit to hold to bail may be sworn to before the attorney for Plaintiff, being justice of the peace.

Such affidavit must show among other things a cause of action, and if the action be for verbal slander, it must be alleged in the affidavit that the words spoken were *false,* or that they were spoken *maliciously.*

*Albany Special Term, March,* 1848. This was a motion by Defend-

ant to vacate an order made by a county judge, to hold the Defendant to bail in an action for slander, and that the bail-bond executed to the sheriff under it be delivered up to be cancelled.

The following are copies of the affidavits on which the order was made.

*Schoharie county, ss:* Rufus Adams, being sworn, says, that Thos. Mills did on the 31st day of December, 1847, make the following declarations concerning Joseph Adams, publicly, in a court room, in presence of twenty or more persons, namely, "Jo Adams (meaning Joseph Adams,) stole my gloves;" and immediately after leaving the court room repeated the same several times, in presence and hearing of several persons, and also then said, "Jo Adams, (meaning Joseph Adams) the damned curse, has stolen my gloves;" and further this deponent saith not.

RUFUS ADAMS.

Sworn and subscribed before me, this 4th day of January, 1848.

J. MACKEY, *Justice of the Peace.*

*Schoharie county, ss:* Joseph Adams being duly sworn says, that Thomas Mills is a single man, about 22 years of age; that he has, till lately, resided with his brother; that he and two of his brothers returned to Gilboa, Schoharie county, about three months ago; that said brothers, James and William, are reported to be in embarrassed circumstances, and have left the county of Schoharie, and that attachments have been issued against James, for absconding with intent to defraud his creditors, and that said Thomas Mills brought here a number of horses, and a one-horse pleasure-wagon, besides other personal property; that he has disposed of most of it, at much less than its real value, and is still trying to dispose of the balance; that he is not a freeholder of said county; that some two or three years since, they, Thomas, James and William, resided here, the two latter got in embarrassed circumstances, and first James and then the others, Thomas and William, absconded; that they were not heard from till their return as above stated, when Thomas, who was then a man, owned nothing, but since their return claimed to own all the personal property, as this deponent believes, to keep it out of the hands of the creditors of James and William; that it is not known where James and William and their families have gone, and this deponent verily believes he (Thomas) is disposing of his property, with the intention of soon absconding, and that unless the said Thomas Mills is held to bail, he will abscond out of the jurisdiction of the Supreme Court; and that this deponent will be unable to collect his damages, which he has sustained by reason of the publishing the slanderous words by said Thomas Mills against this deponent: and this deponent further says, that about

two weeks since he heard Thomas Mills say that he was a going to leave in a few days for Boston, Mass., or down-east somewhere, and further this deponent saith not.                    JOSEPH ADAMS.

Sworn and subscribed before me, this 4th day of January, 1848.

J. MACKEY, *Justice of the Peace.*

On the argument of the motion, the counsel for Defendant read, subject to objection, affidavits (copies of which had been duly served,) to show the falsity of the affidavits on which the order was made; and the counsel for Plaintiff also read, subject to objection, additional affidavits to rebut the statements made in Defendant's affidavits.

J. EDMONDS, *for Defendant.*
A. TABOR, *for Plaintiff.*

PARKER, Justice.—It is stated in the notice of this motion served on the Plaintiff's attorney, that the motion would be made "on the grounds that the affidavits upon which the order to hold to bail was allowed, are insufficient to make out a *prima facie* cause of action, and are insufficient to show that Defendant was about to leave the state, and also that they are irregular, being sworn to before the attorney for Plaintiff, as justice of the peace." The Defendant has thus restricted himself so as to preclude his reading other affidavits, and no additional affidavits can, of course, be read on the part of the Plaintiff. I must, therefore, reject the new affidavits read on both sides on the argument of this motion, and confine myself to an examination of the affidavits on which the order to hold to bail was made.

The objection, that these affidavits were verified before the attorney for Plaintiff, as justice of the peace, is not tenable. When they were sworn to, no suit had been commenced. The affidavits were not therefore entitled. In such case, the general rule that precludes the taking an affidavit before the attorney in the suit, does not apply. (*Taylor* v. *Hatch,* 12 John. 340, and notes; Tidd's Pr. 155; 6 Cowen, 587; 15 John. 531; 17 John. 2.)

The remaining question is as to the sufficiency of the affidavits on which the order was made. To authorize an order to hold to bail, the affidavits must show a good cause of action, and that the Defendant is a transient person, or is about to depart beyond the jurisdiction of the court, and this must not rest merely upon information and belief, but facts and circumstances must be set forth, from which such an inference may properly be drawn. The declarations of the Defendant as to his

intentions are, of course, among the most satisfactory kinds of evidence to show that he is about to go beyond the jurisdiction of the court. (1 Howard's Pr. Rep. 251 ; 2 do. 27, 110, 230, 272 ; 7 Hill, 153.) Perhaps there was enough shown in the affidavit as to the transient character, and the intentions of the Defendant to justify the making of the order.

But, however that may be, there is another defect in the affidavits, less doubtful in its character. They do not show *a cause of action.* They prove the speaking of the words complained of, but do not aver that the charge made was false. This was a *material and necessary* allegation. And everything necessary to show a cause of action, must be set forth in the affidavit. (2 Howard's Pr. Rep. 232.)

In *Pearson* v. *Picket,* 1 McCord, 472, the same question was presented, and the court set aside an order made to hold to bail in an action for slander, on the sole ground that the affidavit omitted to state that the words spoken were false.

The counsel for Plaintiff argues that there was a *prima facie* cause of action without an allegation of the *falsity* of the charge, and refers to 2 Ch. Pl. 1 ed. of 1833, 620, note *m,* to show that the inducement, averring generally that the Plaintiff is innocent of the crime imputed, may be omitted in the declaration. This general inducement may, no doubt, be omitted, but the specific allegation that the charge was made "falsely and maliciously," must be retained. These words are found in all the precedents, and the authorities hold that such words, or equivalent words, are necessary. The declaration may be either that the Defendant "*falsely spoke*" the words, or that he spoke "*the false words.*" (1 Keble, 273.)

The declaration must show a malicious intent in the Defendant, but it is not necessary to use the word *maliciously,* for the word *falsely* or *wrongfully,* is generally considered sufficient. 1 Saund. 242, *a,* note 2 ; 1 East. 563 ; 1 T. R. 545 ; Com. Dig. action for defamation, G. S.; 2 Ch. Pl. 455, by Greening; though, in *Saxon* v. *Castle,* 6 Adol & Ellis, 652, it was decided that "wrongfully and injuriously" would not answer, and judgment was arrested because the word "maliciously" was not used : *vide* also Chitty's Pl. 421, where it is said that the word *maliciously,* or an equivalent expression, as *wrongfully and falsely,* must be used. It is held, that the word *maliciously* imports that the words were *falsely* uttered. (*Sutton* v. *Johnstone,* 1 T. R. 493 ; 1 Starkie on Slander, 2d ed. 436 ; 1 Chitty's Pl. by Greening, 421.)

An allegation therefore that the words were spoken *falsely,* or that they were spoken *maliciously,* was necessary to make out a prima facie cause of action. The mere speaking of the words, without malice, would

not be actionable, and it always rests upon the Plaintiff to show that the words were spoken under such circumstances, as warrant the legal inference of malice. The Defendant would defend against such a charge under the plea of not guilty.

In *Van Vechten* v. *Hopkkins*, 3 John. 293, this point was not taken, nor does it fully appear from the report, what was set forth in the affidavit on which the order to hold to bail was made. Neither that case nor *Satterlee* v. *Lynch*, 6 Hill, 228, goes farther than to hold that the affidavit must make out a *prima facie* cause of action against the Defendant.

I find no case, except that of *Pearson* v. *Picket*, above referred to, in which the point now under consideration has been expressly adjudged, but I think, upon principle, the decision in that case was correct.

The motion must therefore be granted, but without costs.